May it please the Court. And by the way, it's 10 minutes of each side. Yes, I understand that. If you want rebuttal, please hold back, you know, save any time you want to use. I've indicated to the clerk I want to have three minutes in rebuttal. Thank you. May it please the Court. There's not much dispute about, in fact, no dispute about what's happened in this case and what the parties are. The question is, who is a federal employment employee for purposes of 29 U.S.C. 791? And we have briefed the issue. And on page nine and 10, I provide you with a shipyard instruction defining who is a federal employee. As you know, it says there that a civilian employee assigned to a tenant activity in support of the shipyard is covered by the parking regulations. That regulation is at number 35 on the appendix. It defines who sets forth handicapped employee, of which Lopez clearly is one. On page 39, it says he has bumping rights. And of great practical significance in this is the fact that he worked a graveyard ship from late at night till early in the morning, when the shipyard activity is at its minimal activities. Yet, upon applying for a disability parking permit to accommodate his disability, as the Court please, he's been aware that he has a prosthesis in his right leg from the hip down, and he has to walk. And he was forced to walk during his time of employment a considerable distance in order to get to his employment inside the shipyard. There's no dispute that the shipyard has absolute total control over handicapped parking spaces inside the shipyard. No dispute of that. Isn't it the issue that we have to get to? What it boils down to is whether he was a an employee. That's correct. Of the Navy. Correct. The Navy has civilian employees and he's employed by a contractor. Yes. I guess the we just we have to address the legal issues relating to whether he should be treated as an employee of the Navy. That's correct. For purposes of applying the disability handicapping provisions of 29 U.S.C. 791. That's correct. The ship turned down his request for a handicap on the grounds for first for they didn't want to do it. And secondly, because of a union agreement. Well, as agreements have never been supplied to us, the court below and so on. And so you have to determine what how much control the Navy has here over parking. It has absolute control over parking inside the shipyard. And I want to emphasize to this court that I made a very significant point. I believe that if this decision of the court below is sustained, this will be and cause private employers who are tenant activities inside the shipyard to openly and notoriously discriminate against the handicap because they cannot get to their work. Now, we've got cases in the Ninth Circuit involving Bledsoe, who was a actually a member of the Navy. She was denied access to a ship. Courts. This court has said that's actionable. You've got the Gonzalez case about military people. Now you've got and you've got the Lopez case, which addresses the issue of tenants inside the shipyard where they have the parking space available, where handicapped people have rights. And yet the Navy absolutely, totally, completely, without question, controls that. And that's discriminatory. And if this decision is upheld by the court, that will cause further discrimination against handicapped employees. I don't conceive of any private employer who has to work and is forced to work as A.T.A. was inside the shipyard ever hiring a handicapped employee because they can't accommodate. And for the same reason, they can't accommodate in their own right, especially on the graveyard ship. There's no taxis. There's no transportation. There's no way to do it. Lopez has a perfectly good and valid claim that he was discriminated against by the Navy as a under their own definition of what constitutes a civilian employee under the NAV shipyard instruction, which is part of the case here. We have cited that to the court. I don't have any question about that, that he qualifies under that for a handicapped parking permit. And as a practical matter, on the graveyard shift, when nobody's there, they should have given him one out of hand, without more. This is pure rank, unconscionable discrimination against the handicapped. This is a given. It's unconscionable. The government is arrogant. And but they're the government. And they're notorious for being arrogant at matters of this kind. What is your remedy? What was your remedy against your employer, ATT? Against ATA? ATA. They're caught in a situation where they would love to accommodate him, but they can't because it's all in the control of the shipyard. Well, they could have hired a taxi to wheel him into his job if they wanted to. The expense of that would be such that probably. That has never bothered the government when it enacts legislation. It should, if it hasn't, Your Honor. It should. It should bother them greatly. The policy of the Navy, as expressed in the 5 CFR, the one I pointed out to you, is to eliminate discrimination in all phases of naval activity. And it should bother the government a lot. And about the equity, I mean, if you were making a jury argument, you'd win. The question of law is when they outsource, when the government outsources various jobs to civilian employers, they make their own arrangements with their employees and the government separates itself and washes its hands of liability for this sort of thing. We have made the point in our brief, I believe, Your Honor, that the Navy has covered this situation by their shipyard instruction. Page 32 of the appendix, the instruction cites. If that instruction is binding on the Navy, then shouldn't you be in the court of claims? Excuse me? Shouldn't you be in the court of claims rather than in the district court if that's binding? No, because it's covered by Section 791. And it would not. The court of claims would not have jurisdiction because it's not that is not within their jurisdiction. Discrimination claims. But that's an entitlement. If he's if he's entitled under the Navy or under the Navy regulations, that's an entitlement question to be worked out with the Navy. Well, I will stand by it. I don't think the court of things I have three minutes left. I'd like to reserve that. Thank you. Good morning. May it please the court. Mr. Holcomb. My name is Jamie. I'm an assistant United States attorney representing the secretary of the Secretary of Navy in this case. The Rehabilitation Act of 1973, as amended, protects federal employees and applicants for employment from discrimination based on handicap. It is undisputed in this case that Mr. Lopez was directly employed by Applied Technology Associates, A.T.A., a company that was subcontracted for a very short period of time to provide computer data entry services at the Puget Sound Naval Shipyard. The issue in this case, then, is whether or not Mr. Lopez should be considered also to be an employee of the federal government for purposes of triggering the protections of the Rehabilitation Act. In this case, it's the government's position that the district court correctly decided that he should not. When you apply the standards set forth by the Supreme Court and by this court in determining whether an employee-employer relationship exists when somebody is not directly hired by a particular company or by the federal government, when you apply those standards, it is clear that the Navy had no control over Mr. Lopez or the work that he performed. Mr. Lopez was hired directly by A.T.A. He was paid directly by A.T.A. His benefits, his sick leave, his annual leave was given to him by A.T.A. Other than the fact that the work was performed at the shipyard, the shipyard had absolutely no control over the work, how it was performed, or what work was actually done. A.T.A. had their own supervisors on the premises, and they supervised Mr. Lopez. In this case, yes, it might have been nice if the Navy had been able to provide him a parking spot. But what we are here today is to decide whether or not they absolutely had the responsibility to do so under the Rehabilitation Act. And in this case, they did not. What is your response to the plaintiff's argument that the Navy's own shipyard regulations would designate this plaintiff as an employee? The parking regulation promulgated by the shipyard does not confer employee status on Mr. Lopez. There's no authority, Your Honor, and I know of no authority for that. The parking regulation merely sets out how parking spaces will be allocated at the shipyard. As the Court may know, it's a very precious commodity on the shipyard. Most people don't get a parking spot there. And, in fact, now after 9-11, no one can park on the premises of the shipyard. But that's just merely a regulation stating how the parking spaces will be allocated, who may or may not be entitled to a parking space. It certainly does not confer employee status on Mr. Lopez. He clearly was an employee of ATA. His remedies were to whatever extent he had a remedy, his remedy was against ATA. And I really have nothing more to add other than what is in my brief. So unless ---- Let me ask you this question. I thought the case was well-briefed and that the Navy has a pretty good position based on traditional standards. But how do you answer Mr. Holcomb's argument that if an employee such as this is not considered an employee of the Navy for this purpose, that the contractor company, ATA or others, will discriminate and not hire a person who's got a disability that could be easily accommodated? I don't know that ---- How do you deal with that? Is that like I deal with it by saying, well, that's true, but it's too bad because it's up to Congress? Or is there another answer? I don't know what the answer is, Your Honor, but I don't think it's right to contort a statute, you know, to try to cover every particular situation that might exist out there. Perhaps ---- We don't contort. We just interpret. But we do have some leeway sometimes as to how we interpret. This was a very short period of time that Mr. Lopez was employed. It was approximately two months. Perhaps if he had been there longer, they would have been able to work out a solution for him. I mean, it wasn't anything that was really addressed because he immediately went through the EEO process claiming to be a federal employee. He didn't try to find an accommodation from his own company. It's possible that ---- and, you know, I can't really argue the point because I don't know all of the circumstances that might possibly exist out there. But ATA possibly could have given him a job on a day shift. He didn't have a problem, evidently, on the day shift. There may have been accommodations that they might have been able to come up for. I don't think we can say that because the contract outfit cannot get handicapped parking on the premises of the Puget Sound Naval Shipyard, that in all circumstances they're not going to employ handicapped individuals. You know, I think that it's possible that they could have worked out some sort of accommodation for Mr. Lopez. Does the record tell us why this was a night shift? You know, as a practical matter, why they didn't just let him have the parking space? You know, it doesn't. I think it's just because it's very limited on the base. And it was, like I say, the period of time was so short that there really wasn't an opportunity to explore anything else. The ATA lost the contract, nothing to do with Mr. Lopez, after he was working there for approximately two months. Well, let's see if Judge Lay or Judge Goodwin have any questions. If not, you don't have to use all your time. Thank you, Your Honor. We've got your briefs. Now, Mr. Holcomb, you have about three minutes left. I'll be very brief, Your Honor. I don't think there's any question that my esteemed opponent, Ms. Mehta, just stated that the shipyard had absolute total control over these issuance and disability parking permits. No question about that. She indulged in a lot of speculation as to what could happen. We know what happened in this case. The private employer, ATA, fought hard to get him a disability parking place, and they rejected it twice. They indicated there was no transportation at the time they hired him. They couldn't do it. In this case, given the right of control, given the shipyard instruction, and even the EEO would agree in there on page three of the supplemental excerpts of records, there's 12 different factors, none of which control, they said. Well, in our esteemed opinion on this, that the shipyard instruction, which is the crux of the discrimination in the faded issue handicap permit, does control in this case. And it should be followed by this Court. And Lopez should be able to make a claim for discrimination. This is rank discrimination against a handicapped employee. You've made a good and spirited argument for your client. The problem we have is whether Congress has left us any room here because they've limited the application of this act to employees of the government. I would suggest to the court that you will not find a definition of what constitutes a federal employee. It's up to this Court to say who is a federal employer or not. And I think it's up to this Court to say what did Congress intend, what did the Navy intend. They intended that handicapped people will not be discriminated against. And this is rank discrimination. To me, the decision of this Court should be clear on that point, that there is no definition of federal employee. Does the Navy have any regulations that address accommodating contractor employees? Well, the shipyard instruction itself is a long series of allows handicapped parking. Right. Although, but if that applies just to the Navy's own civilian employees, it doesn't get you anywhere. The question is that I was wondering is if they have anything that says it's directed to how to deal with contractor employees. I would call this Court's attention to subsection T, which is the crux of our argument that he is a civilian employee. The instruction sets up two categories, one for civilian personnel and the second category is civilian employees. The first part of that is meant to reach employees of the Navy at the shipyard. The second part of that is meant to reach everybody else, tenant commands and so on. There is a distinction there that I think is critical that would suggest that Lopez is an employee of the United States government for purpose of applying the act. Your time's up, but I do have one final question that's just on my mind. So what was the damage to Mr. Lopez? I know he's asserted a damage claim. He had more difficulty walking this distance, but did he make it to work every night? He managed to get to work. He had to work during winter hours, which is the most difficult time for him to walk. He had to walk considerable distance. In fact, I think we calculated one time that he during the period of the worker, he had to take 50,000 steps to get to work. We calculated from where he parked and the approximate length of the step, approximate length to the place and back. And it's significant. It's nothing. And it's painful for him. And it's cold and it's wet, you know, and all those things. And this is the reason we have handicapped people. Thank you very much for your answer. Ask this court to reverse the district court. Thank you. Okay. We appreciate the argument of counsel and the case will be submitted.
judges: Lay , Goodwin, Gould